UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11617-GAO

WAYNE P. GARFIELD,
Plaintiff,

v.

THOMAS McLAUGHLIN, et al.,
Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION
February 13, 2012

I have reviewed the magistrate judge's "Report and Recommendation on Defendants Hughes and Rodrigues's Motion to Dismiss" (dkt. no. 76) ("R&R"), the parties' original submissions in support of and in opposition to the motion to dismiss, and the plaintiff's objections to the R&R. I agree with the magistrate judge that these defendants are entitled to qualified immunity on counts III, V, and VIII to the extent directed against Hughes and Rodrigues. Additionally, I concur that the plaintiff has failed to state a claim for infliction of emotional distress against these two defendants and that count VI, to the extent directed against Hughes and Rodrigues, should be dismissed.

Accordingly, I ADOPT the recommendation that Hughes and Rodrigues's motion to dismiss be GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WAYNE P. GARFIELD, | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 09-11617-GAO |
| THOMAS L. McLAUGHLIN, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

REPORT AND RECOMMENDATION ON
DEFENDANTS HUGHES AND RODRIGUES'S MOTION TO DISMISS.

November 1, 2011

SOROKIN, M.J.,

For the following reasons, I RECOMMEND that the Court ALLOW the Motion to Dismiss filed by Defendants Donna Hughes and Dina Rodrigues. Docket # 66.

I. FACTUAL ALLEGATIONS

The following factual allegations are drawn from the Third Amended Complaint. Docket #58.

The Plaintiff was the "stand-by" guardian for his fiancé Jacqueline Goglia's seven-year-old daughter while living with Jacqueline Goglia in the basement apartment of the home of Jacqueline Goglia's mother, Nancy Goglia. During the early morning hours of June 5, 2009, Donna Hughes and Dina Rodrigues, social workers with the Department of Children and Family Services ("DCF"), and a Woburn police officer arrived at the home and attempted to gain entrance. Hughes and

1

Rodrigues explained that they had received a report that Jacqueline Goglia had abused her daughter in the early hours of June 5, 2009. Garfield stated that that was not possible because Jacqueline Goglia had been in the hospital since 8:00 p.m. on June 4, 2009. Garfield ordered the officials to leave, at which point Nancy Goglia consented to the officials' entry into the home. Several hours later, the officials told Garfield that either he could vacate the premises or they would take the child to foster care. Ultimately, the Woburn police officer drove Garfield to the town line and deposited him there.

Garfield claims that Hughes and Rodrigues violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution subject to redress under 42 U.S.C. § 1983 (Counts III and VIII), violated his rights under the Massachusetts Civil Rights Act ("MCRA"), G. L. c. 12, § 11 (Count V), and intentionally or recklessly inflicted emotional distress on him (Count VI).

Hughes and Rodrigues now move to dismiss pursuant to FED. R. CIV. P. 12(b)(6), asserting that they are entitled to qualified immunity from suit on Garfield's constitutional and MCRA claims and that the intentional and reckless infliction of emotional distress claim fails to state a cause of action. Docket # 67.

II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, _ U.S _, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1949) (alterations omitted).

III. DISCUSSION

    A. Qualified Immunity

"Persons acting under color of law are liable under 42 U.S.C. § 1983 for infringing upon the constitutional or statutory rights of private parties." Kauch v. Dep't for Children, Youth & Their Families, 321 F.3d 1, 4 (1st Cir. 2003). It is undisputed that Hughes and Rodrigues, DCF employees, were performing functions that were "inherently governmental in nature" when they went to Nancy Goglia's home. Frazier v. Bailey, 957 F.2d 920, 928 (1st Cir. 1992). As such, they

are amenable to suit under § 1983 and the MCRA and entitled to raise qualified immunity as a defense. See Rodriques v. Furtado, 410 Mass. 878, 881 (1991) (immunity standard under the MCRA is the same as that under § 1983).

The principle of qualified immunity shields government officials preforming discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity standard is not a stringent test, and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotation omitted). This protection is afforded to officials so that they need not always err on the side of caution from fear of being sued. Id.

The two-part qualified immunity inquiry test is the same under both 42 U.S.C. § 1983 and the MCRA. Rodriques, 410 Mass. at 881. "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 269. The second step, in turn, has two aspects. The first aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation and to overcome qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Id.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

4

each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. Stripping the Third Amended Complaint of the type of allegations that Iqbal instructs this Court to disregard, the Court is left with the assertion that Hughes and Rodrigues violated Garfield's constitutional rights when they entered Nancy Goglia's home, in which he had a basement apartment, pursuant to Nancy Goglia's invitation and indicated that they would take the child into foster care unless he left the premises.

"[T]he government has a compelling interest in safeguarding children that it suspects are victims of abuse and in acting quickly on their behalf." Hatch v. Dep't for Children, 274 F.3d 12, 22 (1st Cir. 2001). In support of this compelling interest, "the state may freely investigate allegations of child abuse[.]" Id. at 20. DCF is authorized to take a child into immediate temporary custody prior to a hearing if it has reasonable cause to believe that the removal of the child is necessary to protect the child from further abuse or neglect. Mass. G.L. c. 119, § 51B(c); Hatch, 274 F.3d at 20-21. Additionally, "[i]t is not an improper threat for a State official merely to express an intention to bring a petition under Mass. G.L. c. 119, § 24, to obtain custody of a child, if, in the official's judgment, such a petition is warranted." Stephens v. Exec. Office of Health & Human Servs., No. 01-P-903, 2003 WL 1477786, at *3 (Mass. App. Ct. March 24, 2003).

DCF's involvement in this case was initiated by a report, pursuant to Mass. G.L. c. 119, § 51A, from the hospital where Jacqueline Goglia was being treated concerning suspected abuse of Jacqueline Goglia's daughter. Docket #45, Exs. 3 and 4.[1] Pursuant to Mass. G.L. c. 119, § 51B(a),

---

[1] The police reports that compose Exhibits 3 and 4 to Docket #45 are incorporated by reference into Garfield's Third Amended Complaint. See Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quotation omitted) ("[I]t is well-established that in reviewing the complaint, [pursuant to a motion to dismiss,] [the court] may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even

5

DCF was required to investigate the suspected child abuse. As required by Mass. G.L. c. 119, § 51A(b), DCF conducted a home visit and, in the process, determined that the child would be left in the care of Nancy Goglia as long as Garfield did not remain at the home due to his long criminal history. Garfield does not allege that DCF's intervention was without basis.

In light of Garfield's criminal history, the allegations of abuse, and the applicable provisions of Mass. G.L. c. 119, § 51B, Hughes and Rodrigues are entitled to the protection of qualified immunity for their conduct alleged in the Third Amended Complaint. Accordingly, I RECOMMEND that the Court DISMISS Counts III, V, and VIII to the extent directed against Hughes and Rodrigues.

B. <u>Infliction of Emotional Distress</u>

In order for a plaintiff to prevail on a cause of action for either intentional or reckless infliction of emotional distress, the plaintiff must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe."

<u>Howell v. Enter. Publi'g Co., LLC</u>, 455 Mass. 641, 672 (2010) (alterations omitted) (quoting <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144-45 (1976)); see <u>Bowman v. Heller</u>, 420 Mass. 517, 519 n.2 (1995) (stating that the elements of a cause of action for reckless infliction of emotional distress are the same as those for intentional infliction of emotional distress).

DCF is authorized to take a child into immediate temporary custody prior to a hearing if it

---

though not attached to the complaint, without converting the motion into one for summary judgment.")

6

has reasonable cause to believe that the removal of the child is necessary to protect the child from further abuse or neglect. Having found that Hughes and Rodrigues are entitled to qualified immunity, at least in the circumstances of this case, there can be no claim that their conduct was "extreme and outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized society." Accordingly, I RECOMMEND that the Court DISMISS Count VI to the extent directed against Hughes and Rodrigues.

IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court ALLOW the Motion to Dismiss of Defendants Huges and Rodrigues. (Docket 27).[2]

/s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE

---

[2] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See FED. R. CIV. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).